OPINION
{¶ 1} Monica Boyd was found guilty of possession of cocaine, a first degree felony, upon her plea of no contest. She was sentenced to a mandatory term of three years.
 {¶ 2} Boyd assigns as error the overruling of her motion to suppress evidence.
 I *Page 2 {¶ 3} Dayton Police Officers Scott Florea and Mitchell Olmstead testified at the suppression hearing on behalf of the State. Boyd also testified. Where the testimony of the officers, which was largely consistent, differed from Boyd's, the trial court credited the testimony of the officers.
 {¶ 4} The State's evidence is summarized as follows.
 {¶ 5} The landlord of Boyd's apartment complex contacted the Dayton Police Department about complaints of other tenants about drug activity at Boyd's apartment. On July 19, 2007, around 8:15 a.m., four uniformed Dayton Police officers approached Boyd's floor-level apartment. Two officers stationed themselves near the sliding door to prevent escapes, and Officers Florea and Olmstead went to Boyd's front door. The officers' purpose was to search for drugs if Boyd would permit it. Boyd answered a knock on her door and opened it slightly. Olmstead told Boyd they were investigating complaints of drug activity at her apartment and requested admission into the apartment to discuss those complaints. After a short time during which Boyd completed getting dressed, she admitted the officers.
 {¶ 6} Olmstead told Boyd they were required to investigate complaints about drug activity and asked to look around for signs of drug activity to which Boyd responded "Go ahead." Boyd neither asked the officers to stop nor placed limits upon their search. Officer Florea observed a shoe box on a couch by the patio door that contained a bag of crack cocaine and a medicine bottle that contained a baggie of white power. Eventually, Officer Steckel, who had entered the apartment from his initial position outside, found a scale near the couch.
 {¶ 7} Prior to the search, the officers did not ask Boyd to sign a consent to search form, and after the drugs were found, she refused to sign a consent to search form. After the drugs *Page 3 
were found, the officers advised Boyd of her Miranda rights.
 II {¶ 8} Although conceding that the need for a search warrant is excused where there is a consent to search, Boyd contends that her consent was not freely and voluntarily given, but was the "product of implicit coercion by the police." She points to the early, unannounced appearance of the police, in full uniform, for the stated purpose of "just talk(ing) to her," when their real purpose was to search for drugs if Boyd would permit them to do so.
 {¶ 9} Whether Boyd's consent was voluntary rather than the product of duress or coercion is a question of fact to be determined from the totality of the circumstances. State v. Posey (1988), 40 Ohio St.3d 420,427, citing Schneckloth v. Bustamonte (1973), 412 U.S. 218, 227.
 {¶ 10} When considering a motion to suppress, the trial court assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses.State v. Retherford (1994), 93 Ohio App.3d 586, 592, 639 N.E.2d 498, citation omitted. Accordingly, upon review of the decision on a motion to suppress, the court of appeals is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Id. Accepting those facts as true, this Court must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Id.
 {¶ 11} There is nothing in the State's evidence that compels a conclusion that Boyd's consent was a product of implicit police coercion. According to that evidence, the officers told Boyd before she admitted them to her apartment that they were investigating complaints of drug *Page 4 
activity at her apartment that they wanted to discuss with her. The State's evidence was that the officers would only search if Boyd consented to their doing so, which she did. There was no testimony whatsoever that the officers threatened Boyd in any way.
 {¶ 12} There was nothing inherently coercive about two uniformed officers appearing at Boyd's door at 8:15 on a summer morning and asking to be admitted to discuss complaints about drug activity at her apartment. Nor was their request to search in these circumstances inherently coercive.
 {¶ 13} There is no basis for us not to accept the trial court's determination that Boyd's consent was voluntary.
 III {¶ 14} The assignment of error is overruled.
 {¶ 15} The judgment will be affirmed.
DONOVAN, P.J. and GRADY, J., concur.
Copies mailed to:
Michele D. Phipps Marshall G. Lachman Hon. Dennis J. Langer *Page 1